IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YAHYI ABDUL SHIHEED,   *

  Plaintiff,   *

v   *   Civil Action No. GLR-17-1047

LIONEL BURNETT, et al.,   *

  Defendants.   *

*****

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Ellwood Lyles and Tamisha Forbes' renewed Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment (ECF No. 54) and Defendants Emmanual Dabiri, Oluwasegun Fashae, Adele Olakanye, Albert Osetosafo, and Sh'Cola Wright's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.[1] (ECF No. 55).[2] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Motion.

---

[1] Defendant Lionel Burnett was not served with the Complaint. (See Summons, ECF No. 48) (sealed).

[2] Also pending before the Court are Plaintiff Yahyi Abdul Shiheed's six Motions: (1) Motion to Request Order (ECF No. 49); (2) Motion to Add Exhibits (ECF No. 63); (3) Motion for Appointment of Counsel (ECF No. 64); (4) Motion for Requested Order (ECF No. 65); (5) "Motion of Affidavit" (ECF No. 66); and (6) "Motion of DVD Filing" (ECF No. 67). Because the Court will dismiss the Complaint without prejudice, it will deny these Motions as moot.

## I. BACKGROUND[3]

Plaintiff Yahyi Abdul Shiheed is an inmate who is currently incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. (Compl. at 1).[4] In his initial complaint filed on April 14, 2017, Shiheed alleges that on March 26, 2017, while he was housed as a pretrial detainee at the Jessup Correctional Institution ("JCI"), "correctional officers brutally beat me up for no legit reason." (Compl. at 3, ECF No. 1; Suppl. Compl. at 3, ECF No. 4). In an Administrative Remedy Procedure ("ARP") request attached to his Complaint, Shiheed explains that as a result of his holding his door slot open, Officers Burnett, Lyle and Forbes, along with other unnamed officers, came into his cell and beat him up in violation of his Eighth Amendment rights. (Id. at 3–4). The officers claimed Shiheed had a weapon, but he states that no weapon was found on him or in his cell. (Id. at 4). The officers punched, stomped, and kicked Shiheed in his face and head. (Id.). Burnett threatened to kill him. (Id.). Forbes held a video recorder but did not "get the footage of what they did to me in the cell." (Id.). Shiheed states that he did not receive a ticket for the incident because the officers were trying to cover it up. (Id.).

---

[3] Unless otherwise noted, the facts outlined here are set forth in Shiheed's Complaint, (ECF No. 1), and Supplemental Complaint, (ECF No. 4). To the extent the Court discusses facts that Shiheed does not allege in his Complaint and Supplemental Complaint, they are uncontroverted and the Court views them in the light most favorable to Shiheed. The Court will address additional facts when discussing applicable law.

[4] Citations to the Complaint (ECF No. 1) and Supplemental Complaint (ECF No. 4) refer to the pagination the Court's Case Management and Electronic Case Files ("CM/ECF") system assigned.

He was taken to the University of Maryland hospital for treatment. (Id.). He received fifteen stitches to his left eye and cannot see out of that eye. (Id. at 3). The hospital took pictures of Shiheed's face. (Id.).

On March 27, 2017, Shiheed was issued a Notice of Inmate Rule Violation regarding this incident. (Lyle & Forbes Mot. Dismiss Summ. J. Ex. 2 at 26, ECF 29-3). He was charged with violating rules 100 (engage in a disruptive act), 101 (commit assault or battery on staff), 400 (disobey an order), 405 (demonstrate disrespect or use vulgar language) and 408 (misuse, alter, tamper with, damage or destroy State property or property of another). (Id.). A hearing was scheduled for June 6, 2017 and Shiheed entered guilty pleas, admitting to the rule violations. (Id. at 30–31). As punishment Shiheed received 200 days in disciplinary segregation, the revocation of 120 credits, and the indefinite loss of visitation. (Id. at 33).

On March 29, 2017, Shiheed signed ARP complaint JCI-0322-17 regarding the incident. (Id. at 36–37). After investigation, the ARP was dismissed on April 14, 2017. (Id. at 40). Also on April 14, 2017, Shiheed sued Defendants in this Court. (ECF No. 1). On June 16, 2017, Shiheed appealed to the Inmate Grievance Office ("IGO"). filed IGO No. 20170943 as a grievance appeal from ARP JCI-0322-17. (Hassan Decl. ¶ 4, ECF No. 55-7. On January 3, 2018, an Administrative Law Judge ("ALJ") conducted a hearing on the appeal. (Id.). On February 26, 2018, the ALJ denied and dismissed the grievance as without merit. (Id.; see also id. at 11). Subsequently, the Circuit Court for Allegany County, Maryland affirmed the ALJ's decision in Case No. C-01-Cv-18-000123. (Hassan Decl. ¶ 4).

3

On January 25, 2019, Lyles and Forbes file their renewed Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment. (ECF No. 54). To date, the Court has no record that Shiheed filed an Opposition or renewed his previous Opposition, (ECF No. 34).[5]

Also on January 25, 2019, Dabiri, Fashae, Olakanye, Osetosafo, and Wright filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 55). Shiheed filed an Opposition on February 12, 2019. (ECF No. 61).

## II. DISCUSSION

### A. Conversion of Defendants' Motions

Defendants style their Motions as motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'"

---

[5] On January 30, 2019, the Clerk mailed Shiheed a letter informing him that Lyle and Forbes had filed a motion to dismiss or for summary judgment; that he had twenty-eight days to respond to the motion; and that the failure to do so could result in the dismissal of his case. (Jan. 30, 2019 Ltr., ECF No. 56).

4

Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P.

5

56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (quoting Young v. UPS, No. DKC-08-2586, 2011 WL 665321, at *20 (D.Md. Feb. 14, 2011)). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 245 (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380–81 (D.C.Cir. 1988)).

6

Here, Shiheed was on notice that the Court might resolve Defendants' Motions under Rule 56 because they styled their Motions in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. Shiheed did not file a Rule 56(d) affidavit, nor does he otherwise assert that he needs discovery to properly address the Motions. Accordingly, the Court will construe the Motions as ones for summary judgment.

**B.**     **Standard of Review**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material

fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**C.     Analysis**

Defendants raise the affirmative defense that Shiheed has failed to exhaust his administrative remedies.[6] The Court agrees that Shiheed has failed to exhaust administrative remedies.

    **1.     Exhaustion of Administrative Remedies**

        **a.     The Prisoner Litigation Reform Act's Exhaustion Requirement**

Shiheed's suit is subject to the provisions of the Prisoner Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e (2018), which provides, in pertinent part, that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . , by a prisoner confined in any . . . prison . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[7]

---

[6] Defendants also assert that Shiheed fails to sufficiently allege facts to state a claim for the violation of his constitutional rights, the Complaint incorrectly alleges that Lyle and Forbes participated in the incident, sovereign immunity bars Shiheed's claims, qualified immunity bars Shiheed's claims, and there is no genuine dispute of material fact that Defendants are entitled to judgment as a matter of law.

[7] For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see Chase v. Peay, 286 F.Supp.2d 523, 528 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004). Under Maryland law, the grievance process applies to a wide variety of claims that arise out of the conditions of confinement, including tort claims of assault and battery against prison officers, even if the grievance process cannot provide a comprehensive remedy for those claims. See McCullough v. Wittner, 552 A.2d 881 (Md. 1989).

9

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense that a defendant must plead and prove. See Jones v. Bock, 549 U.S. 199, 215–16 (2007); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, this Court cannot consider a claim that has not been exhausted. See Bock, 549 U.S. at 220. In other words, exhaustion is mandatory. Ross v. Blake, 136 S.Ct. 1850, 1857 (2016). A federal district court, therefore, ordinarily may not excuse a failure to exhaust. Id. at 1856 (citing Miller v. French, 530 U.S. 327, 337 (2000)) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion").

Ordinarily, an inmate must follow required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford, 548 U.S. at 93 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); see Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. See Neal v. Goord, 267 F.3d 116, 121–22 (2d Cir. 2001). "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); see also Kitchen v. Ickes, No. DKC-14-2022, 2015 WL 4378159, at *8 (D.Md. July 14, 2015); Blackburn v. S. Carolina, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009), aff'd, 404 F.App'x 810 (4th Cir. 2010).

The PLRA's exhaustion requirement serves several purposes. These purposes include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Bock, 549 U.S. at 219; see Moore, 517 F.3d at 725 (noting that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). Exhaustion requires that prisoners pursue administrative grievances until they receive a final denial of their claims, appealing through all available stages in the administrative process. Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004); Gibbs v. Bureau of Prisons, 986 F.Supp. 941, 943–44 (D.Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); see also Booth v. Churner, 532 U.S. 731, 735 (2001) (affirming

11

dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); Thomas v. Woolum, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); Pozo, 286 F.3d at 1024 (noting that a prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

An inmate need only exhaust "available" remedies. See 42 U.S.C. § 1997e(a). In Ross, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 136 S.Ct. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. Id. at 1856–57. But it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" Id. at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725.

The Ross Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S.Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. The third circumstance arises when

"prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### b. Maryland's Administrative Procedures

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established the "administrative remedy procedure" or "ARP" for use by Maryland State prisoners for "inmate complaint resolution." See generally Md. Code Ann., Corr. Servs. ("CS"), §§ 10-201 et seq. (West 2019); Md. Code Regs. ("COMAR") 12.02.28.02(1) (defining ARP). This procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction [("DOC")]." CS § 10-206(a).

A "grievance" includes a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth under state law. See CS § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file an ARP with the Inmate Grievance Office ("IGO") against any DOC official or employee. CS § 10-206(a). But if the prison has a grievance procedure that the IGO approved, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. See CS § 10-206(b). Maryland regulations create an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.02.28.01 et seq.

Therefore, Maryland inmates must follow and complete the ARP process before they may file a grievance with the IGO.

The ARP process consists of multiple steps. First, a prisoner is required to file an initial ARP with his facility's "managing official," COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under CS § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In addition, the inmate must file the ARP request within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

Second, if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame, the prisoner has thirty days to file an appeal to the Commissioner of Correction. COMAR 12.02.28.14(B)(5).

Third, if the Commissioner of Correction denies a prisoner's appeal, the prisoner has thirty days to file a grievance with the IGO.[8] COMAR 12.02.28.18; CS § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial ARP request; the warden's response to that request; a copy of the ARP appeal filed with the Commissioner of Correction; and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the IGO concludes that the

---

[8] If the Commissioner fails to respond, the grievant shall file their appeal within thirty days of the date the response was due. COMAR 12.07.01.05(B)(2).

grievance is "wholly lacking in merit on its face," the IGO may dismiss it without a hearing." CS § 10-207(b)(1); see also COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. CS § 10-207(b)(2)(ii). However, if the IGO deems a hearing necessary, an Administrative Law Judge ("ALJ") with the Maryland Office of Administrative Hearings conducts the hearing. See CS § 10-208; COMAR 12.07.01.07–.08.

A decision of the ALJ denying all relief to the inmate is considered a final agency determination. CS § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). If the ALJ concludes that the inmate's complaint is wholly or partly meritorious, however, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the ALJ. See COMAR 12.07.01.10(B); CS § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his remedies. See CS § 10-210. An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. See, e.g., Pozo, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Importantly as to Shiheed's claims, the ARP process applies to allegations that correctional officers used excessive force. COMAR 12.02.28.04(A)(7).

### c. Whether Shiheed Exhausted His Administrative Remedies

Here, it is clear from the record evidence that Shiheed failed to exhaust his administrative remedies prior to bringing this case. He filed suit in this Court on April 14, 2017, not even thirty days after the alleged assault and on the same date that the Warden dismissed the initial ARP. Shiheed did not file his appeal to the IGO until June 16, 2017, months after he instituted this proceeding. It is undisputed that while Shiheed has now pursued his administrative remedies through all stages of the administrative process, he did not finalize the process prior to instituting this case. Shiheed offers no explanation to support a finding that any of the administrative remedy process was somehow unavailable to him such that he could not complete the process before filing a lawsuit in this Court.

Proper exhaustion means not only utilizing all steps made available to the plaintiff by the agency, but permitting the agency to address the merits of the claims. Woodford, 548 U.S at 93 (quoting Pozo, 286 F.3d at 1024). Shiheed did not allow the completion of the administrative process prior to filing this case. Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. See Neal v. Goord, 267 F.3d 116, 121–22 (2d Cir. 2001). In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." See Kitchen v. Ickes, No. DKC-14-2022, 2015 WL 4378159, at *8 (D.Md. July 14, 2015); see also Blackburn v. S. Carolina, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009), aff'd, 404 F. App'x 810 (4th Cir. 2010).

The Court is mindful that dismissal of the Complaint in this instance appears to elevate form over substance given that Shiheed has now completed administrative review. The Court can find no authority, however, that would permit the case to proceed given its premature filing.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Lyles and Forbes' renewed Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment (ECF No. 54) and Dabiri, Fashae, Olakanye, Osetosafo, and Wright's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 55). The Complaint is dismissed without prejudice for failure to exhaust administrative remedies. A separate Order follows.

<u>August 20, 2019</u>  
Date

_____/s/_____  
George L. Russell, III  
United States District Judge